UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 09-66-HRW

DAVID O. ADKINS, PETITIONER,

V. **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

JOSEPH MEKO,
*Warden, Little Sandy Correctional Complex,* RESPONDENT.

## I. INTRODUCTION

David Adkins was found guilty of murdering his wife and was sentenced to a term of fifty years' imprisonment in the Greenup Circuit Court. In this action brought under 28 U.S.C. § 2254, he challenges his conviction asserting that it was the product of (1) unlawful amendment of the indictment; (2) prosecutorial misconduct; and, (3) wrongful admission of evidence. [R. 1 at 5-8]. However, because each claim fails on its merits, the undersigned recommends denial of his Petition for Writ of Habeas Corpus. [R.1]

## II. FACTUAL & PROCEDURAL BACKGROUND

The facts summarized by the Kentucky Supreme Court in the unpublished opinion of <u>David O. Adkins v. Commonwealth,</u> 2005-SC-210 (Ky. 2007), are undisputed and therefore entitled to a presumption of correctness.[1] They state that:

Around 9:00 p.m. on September 2, 2002,Wanda Adkins, [Petitioner]'s wife,

---

[1] <u>Benge v. Johnson</u>, 474 F.3d 236, 241 (6th Cir. 2007)

died instantly from a shotgun wound to her cheek. A short time later, [Petitioner] called Phyllis Vanhoose, his wife's mother, and told her, "Wanda's been shot, and I need some help." Mrs. Vanhoose sent her husband and her brother to help [Petitioner]. She then called 911.

Detectives interviewed [Petitioner] at the hospital. He said that his wife had been upset and was shot and killed when she banged the butt of the shotgun on the floor. Detectives tested the shotgun but could not replicate [Petitioner]'s story. After the shooting, [Petitioner] stayed with Rick Craft for about a week. During this time, [Petitioner] gave several accounts of the shooting, all of which had him holding the gun when it went off. In a second interview with detectives, [Petitioner] stated that the gun jammed and it went off accidentally while he was trying to fix it, shooting Ms. Adkins.

On November 6, 2002, a Greenup County Grand Jury indicted [Petitioner] for one count of murder. The indictment originally charged [Petitioner] with "intentionally shooting [his] wife with a shotgun." However, "intentionally" was hand-marked through, and "wantonly" was written above it. Both the trial court and the Commonwealth's Attorney later noted on the first morning of trial that they did not alter the indictment.

At a pretrial conference held on February 20, 2003, the Commonwealth moved to amend the indictment to provide for a mens rea of "intentionally or wantonly." When asked if there was any objection, counsel for [Petitioner] answered, "No." An order was subsequently entered on March 11, 2003, stating in relevant part: "It is hereby ordered that the above-styled indictment be amended to state that David Adkins committed murder by shooting Wanda Adkins with a shotgun, leaving the mental state of the defendant for the jury to decide."

Trial began on January 18, 2005. On the first morning, counsel for [Petitioner] objected to the amendment to the indictment that had been made in the order of March 11, 2003. Counsel for [Petitioner] argued that the jury should be limited by the original indictment and should not be allowed to consider an intentional state of mind because the grand jury had returned an indictment of charging only wanton murder. The trial court overruled this motion. The trial court then instructed the jury on intentional murder and wanton murder, and the lesser-included offenses of second-degree manslaughter and reckless homicide. The trial court further refused [Petitioner]'s jury instructions on first-degree manslaughter under an extreme emotional disturbance theory or intent to cause serious physical injury theory.

Additionally, at the close of the trial, counsel for [Petitioner] objected to the prosecutor's closing argument. He claimed that the prosecutor was urging the jury

2

to convict [Petitioner] to set an example and for the sake of the community. [Petitioner] was found guilty of murdering his wife and was sentenced to a term of fifty years' imprisonment. He now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

[R. 9 at A82-A83].

In June 2008, Adkins filed a motion to vacate in Greenup Circuit Court, pursuant to Kentucky Rule of Criminal Procedure 11.42. [R. 1 at 3]. The parties agree that "[t]he grounds being raised in the Petitioner's RCr 11.42 proceeding are not being raised or argued in the instant Petition for Writ of Habeas Corpus." [R. 1 at 4]. His 11.42 motion was overruled, and the Petitioner appealed to the Kentucky Court of Appeals; which remained pending when the present petition for writ of habeas corpus was filed on August 7, 2009. [See R. 9 at 2].[2]

In this action, Adkins asserts three grounds for relief: (1) unlawful amendment of the indictment; (2) prosecutorial misconduct; and, (3) wrongful admission of evidence. [R. 1 at 5-8]. The Commonwealth responded by arguing that the petition should be denied on its merits; because it is time barred; and because Adkins' failed to properly exhaust his claims in state court. [R. 7]. The Court will first address the argument that the matter is time barred, before turning to those issues presented regarding exhaustion and the merits of the claim.

### III. STATUTE OF LIMITATIONS

Title 28 U.S.C. § 2244(d)(1) governs in cases where an individual petitions for a writ of habeas corpus from a state court conviction, and provides that the one-year limitation period begins to run from the *latest* of:

---

[2] From a review of the public docket sheets available from the Kentucky Court of Appeals, it appears that since the present action was filed, the Petitioner's appeal has been dismissed by the Kentucky Court of Appeals due to Petitioner's failure to file a brief. See Adkins v. Commonwealth, 2009-CA-120 Entry #13 (Ky. App. September 21, 2009).

3

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable for cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The Commonwealth argues that Adkins failed to file his petition within one year from the date on which the judgment became final by conclusion of direct review as required by § 2244(d)(1)(A). However, for the following reasons the Court finds that the action is not time barred.

In this action, direct review concluded when Adkins' time expired for filing a petition for writ of *certiorari* with the United States Supreme Court. The Kentucky Supreme Court's decision became final on September 13, 2007. [See R. 9 at 1]. Adkins then had ninety (90) days, until December 12, 2007, within which to file petition for writ of *certiorari* with the United States Supreme Court. Sup. Ct. R. 13(1)-(3). Since he did not, his one year statute of limitations under § 2244(d)(1)(A) began to run on December 13, 2007, the day after his time for filing the petition expired. Fed. R. Civ. P. 6(a) ("exclude the day of the act, event, or default that begins the period"); see also, Bronaugh v. Ohio, 235 F.3d 280, 285 (6th Cir. 2000). Normally, assuming no tolling events, his one-year statute of limitations would have expired on December 13, 2008, which was one year after his direct review became final. See 28 U.S.C § 2244(d)(1)(A). However, in this action his statute of limitations was tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The record reflects that in June 2008, Adkins filed a motion to vacate in Greenup Circuit Court, pursuant to Kentucky

Rule of Criminal Procedure 11.42. [R. 1 at 3].  Although his RCr 11.42 motion was overruled by the Greenup Circuit Court, his subsequent appeal to the Kentucky Court of Appeals was still pending on August 7, 2009, the date his petition for writ of habeas corpus was filed. [See R. 9 at 2]. The parties agree that "[t]he grounds being raised in the Petitioner's RCr 11.42 proceeding are not being raised or argued in the instant Petition for Writ of Habeas Corpus." [R. 1 at 4].

Relying on the case of Austin v. Mitchell, 200 F.3d 391 (6th Cir. 1999), the Commonwealth argues that in order to toll the statute of limitations, Adkins' 11.42 state post-conviction motion must address at least one of the claims presented in the instant federal habeas petition.  However, Austin was expressly overruled by the Sixth Circuit in Cowherd v. Million, 380 F.3d 909 (6th Cir. 2004) (en banc).  The Cowherd decision reasons that, by its plain language, Section 2244(d)(2) tolls the statute of limitations when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent *judgment **or** claim* is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). The error in Austin, the Sixth Circuit reasoned, was that "'Austin reads the word 'judgment' out of § 2244(d)(2) and tolls the time only while a particular 'claim' (which Austin took to mean 'theory of relief') is before the state court.')" Cowherd, 380 F.3d at 914 *citing* Carter v. Litscher, 275 F.3d 663, 665 (7th Cir. 2001).  Based on the holding in Cowherd, Adkins' 11.42 motion in Greenup Circuit Court tolled the statute of limitations, and his habeas petition was timely filed within AEDPA's one-year statute of limitations.

### IV. EXHAUSTION & PROCEDURAL DEFAULT

The Commonwealth also argues that Adkins' petition should be dismissed because he has failed to exhaust his state court remedies. [R. 9, Memo. at 8].

The exhaustion principle requires that a habeas petitioner invoke one full round of the state's

review procedures by presenting his claims to the state's highest court. See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir. 2001). In order to properly exhaust state court remedies, a petitioner must "fairly present" both the factual and legal bases for his claims to the state courts. See Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005). On direct appeal, Adkins clearly presented the Kentucky Supreme Court with his allegations of improper amendment of the indictment and prosecutorial misconduct during closing arguments. [See R. 9 at A35 - A40]. Since these two arguments have been fairly presented to the Kentucky Supreme Court, the Court finds that they are exhausted.

Although the Commonwealth persuasively argues that Adkins failed to exhaust the alleged evidentiary errors at trial, [R. 9 at 12-14], his inability to present a colorable claim on this issue warrants an analysis of the claimed errors. Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991); see also Granberry v. Greer, 481 U.S. 129 (1987) ("if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served [if] the district court denies the habeas petition....").

## V. MERITS OF PETITIONER'S CLAIMS

Adkins presents three substantive claims in his petition: (1) unlawful amendment of the indictment; (2) prosecutorial misconduct; and, (3) wrongful admission of evidence. [R. 1 at 5-8]. However, for the reasons stated below, none of which warrant relief from this Court.

**A. Improper Amendment of the Indictment**

The Petitioner's first argument is that the indictment was unconstitutionally amended by the trial court. [R. 1 at 5]. The Kentucky Supreme Court describes the factual basis for this claim as

follows:

> At a pretrial conference held on February 20, 2003, the Commonwealth moved to amend the indictment to provide for a mens rea of "intentionally or wantonly." When asked if there was any objection, counsel for [Petitioner] answered, "No." An order was subsequently entered on March 11, 2003, stating in relevant part: "It is hereby ordered that the above-styled indictment be amended to state that David Adkins committed murder by shooting Wanda Adkins with a shotgun, leaving the mental state of the defendant for the jury to decide."

[R. 9 at A82-A83]. The Kentucky Supreme Court found that this amendment, which occurred two years before trial, did not violate Kentucky law. [Id. at A85]. However, the Kentucky Supreme Court did not address whether the amendment violated the United States Constitution.

Contrary to Adkins' assertion, the amendment of the indictment did not violate his rights under the United States Constitution. It is well-established that "[t]he Fifth Amendment right to a grand jury does not apply to a state prosecution." Castaneda v. Partida, 430 U.S. 482, 509 (1977) *citing* Hurtado v. California, 110 U.S. 516 (1884); see also Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 (2000)(Fourteenth Amendment "has not, however, been construed to include the Fifth Amendment right to presentment or indictment of a Grand Jury"); McDonald v. City of Chicago, Ill., 130 S.Ct. 3020, 3035 n.13 (2010); Williams v. Haviland, 467 F.3d 257, 531-32 (6th Cir. 2006). Since the Fifth Amendment right to a grand jury has not been applied to the states, the trial court's amendment of the indictment does not violate the United States Constitution, and this argument is without merit.

**B. Prosecutorial Misconduct**

The Petitioner's second argument is that his due process rights were violated by statements made during the prosecutor's closing argument. [R. 1 at 6-7]. The Kentucky Supreme Court set forth the allegedly improper statements:

7

> This verdict is going to be used not only in this case, but it'll be used in other cases because when we work out plea agreements, we look at what juries do in similar cases. So what you do here today will be the law here in Greenup County.
>
> [objection by defense counsel - overruled by trial court]
>
> What you do in this case will deter future crimes or it will tell people that they can get away with future crimes. You know, if David Adkins is able to convince you that this was a self-inflicted gunshot wound and he gets away with this, what's to keep anybody from doing the same thing and coming up with any hare-brained story they want as long as there's no other witnesses around, and saying take your pick. It was accidental. She shot herself. I did it; it was an accident. What's to keep anybody from doing that? Tell me, please tell me, that its not that easy to take a 12-gauge shotgun and blow somebody's head off and come up here with all these hare-brained stories and walk out of here without a conviction for murder. Tell me that's not possible. [no further objections by defense counsel]

[R. 9 at A85 - A86]. The Kentucky Supreme Court determined that the prosecutor's statements did not violate the state or federal constitutions.

AEDPA provides the controlling standard of review where a federal habeas court is reviewing a claim previously adjudicated on the merits by a state court. Pursuant to AEDPA, this Court may grant a writ of habeas corpus where the state court has made a decision that is either "contrary to" or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In order to be "contrary to" federal law, the state court result must be "substantially different" from Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, (2000). A state court decision may also be "contrary to" federal law "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 406. A writ may be granted under the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. When determining

whether a state court's decision was reasonable, the courts use an objective standard. Gillard v. Mitchell, 445 F.3d 883 (6th Cir. 2006), *citing* Williams at 409-11.

In the present case, the Kentucky Supreme Court found that the prosecutor's remarks to the jury were aimed at informing the jury that their decision would have a deterrent effect on future crime; the remainder of the prosecutor's statement was an attack on Adkins' conflicting stories about how the shooting had occurred. [R. 9 at A88]. In finding that the trial court had committed no error, the Kentucky Supreme Court concluded that "[t]he prosecutor's closing argument in this case was not egregious nor did it make the trial fundamentally unfair." [Id.]. The Sixth Circuit has stated that in order "[t]o grant relief for prosecutorial misconduct, the prosecutor's comments must be 'so fundamentally unfair as to deny [the defendant] due process' based on the 'totality of the circumstances.'" Hamblin v. Mitchell, 354 F.3d 482, 494 (6th Cir. 2003) *citing* Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974). Based on the totality of the circumstances, the isolated comments made by the prosecutor during closing arguments were not so fundamentally unfair that they violated the Petitioner's due process rights. The Kentucky Supreme Court's analysis of the prosecutor's closing argument was neither contrary to, nor an unreasonable application of, clearly established Federal law; therefore, this argument is without merit.

**C. Evidentiary Errors**

Finally, Adkins contends that this Court should grant relief based on two evidentiary errors: (1) testimony that Adkins was "drugged up," contrary to the Court ruling such testimony inadmissible; and, (2) testimony that Adkins had stated "in front of many people" that he would kill his wife. [See R. 1 at 8]. As noted *supra*, due to the interests of judicial economy and finality, the Court will not address whether these arguments are procedurally defaulted, as they are without merit.

The Kentucky Supreme Court discussed the facts surrounding these alleged evidentiary errors as follows:

> The trial court granted [Adkins'] motion in limine pursuant to KRE 404(b) asking that testimony concerning his alleged drug use be suppressed. Nevertheless, such evidence was admitted inadvertently. Phyllis Vanhoose testified at trial that two days prior to the murder, the victim and [Adkins] were arguing. When asked what the argument was about, Mrs. Vanhoose stated, "It started off about him being drugged up." [Adkins] objected, and the trial court offered to admonish the jury. [Adkins] declined the offer.
>
> ...
>
> Defense Counsel also filed a motion in limine asking the court to suppress any testimony that [Adkins] had on two occasions previously threatened to kill the victim if she ever left. The trial court allowed Mrs. Vanhoose's testimony concerning the incident two days before the shooting where [Adkins] had threatened to kill the victim by blowing her head off. However, the court held that testimony that [Adkins] threatened to kill the victim two years before trial was too remote and therefore inadmissible.
>
> [Adkins] claims as error the prosecution's playing of a tape of [Adkins'] third police interview during closing arguments. In the recording, the detective told [Adkins] that he had threatened to kill his wife if she ever left. On the tape, [Adkins] denies having made this threat. The detective then said that [Adkins] made this statement "in front of many people." [Adkins] claims the statement on the tape by the detective that it was "in front of many people" could have been a reference to the incident two years before the shooting. However, it is simply unclear if it was a reference to the incident two years before trial. The jury had heard testimony about the incident two days before the shooting and likely would have associated that statement with that incident. At best the reference was ambiguous.

[R. 9 at A92 - A93 (internal footnote omitted)]. The Kentucky Supreme Court found that the legally sufficient remedy for the "drugged up" testimony would have been an admonishment by the trial court; however, Adkins refused an admonishment by the trial court, and the Kentucky Supreme Court found no grounds for reversal of the conviction. [Id. at A92]. As to the statement that Adkins had threatened his wife "in front of many people," the Kentucky Supreme Court found that the statement

10

by the detective was vague and, at most, Adkins could have sought an admonishment by the trial court. [Id. at A93 - A94]. Since defense counsel did not object to the statement when it was made, no admonishment was given. The Kentucky Supreme Court ultimately found that the ambiguous statement by the detective was "more likely an overstatement of facts to which there was no objection, than an admission of suppressed testimony. Nevertheless, this Court does not find that [Adkins] was substantially prejudiced in light of the other evidence. As such, we find no reversible error." [Id. at A94].

A federal habeas court reviewing a state conviction must defer to the decision of the state courts regarding the application of state law. The Supreme Court has held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This Court cannot reexamine the findings of the Kentucky Supreme Court to determine whether the admission of the evidence violated Kentucky law, as "the views of the state's highest court with respect to state law are binding on the federal courts." Wainwright v. Goode, 464 U.S. 78, 84 (1983) (per curiam). When analyzing evidentiary errors, such as those at issue in the case *sub judice*, the specific question addressed is whether any of the alleged errors of state law were of such severity that the trial became "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004), *citing* Estelle, 502 U.S. at 69-70. The types of errors that "violate 'fundamental fairness' have been defined 'very narrowly.'" Beuke v. Houk, 537 F.3d 618, 640 (6th Cir. 2008) *citing* Dowling v. United States, 493 U.S. 342, 352 (1990). In compliance with the limited nature of federal habeas review regarding state law issues, this Court will determine whether the admission of the challenged evidence caused the trial to be "so fundamentally unfair" that they deprived the Petitioner

of his due process rights under the Fourteenth Amendment. McAdoo, 365 F.3d at 494.

Neither of these errors violated the Petitioner's due process rights, and do not afford the Petitioner relief. Admission of evidence does not violate due process simply because the evidence is inflammatory or weighs against the defendant; a due process violation only occurs where the admission of the evidence is "so *unfairly prejudicial* that it offends a principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Bey v. Bagley, 500 F.3d 514, 521 (6th Cir. 2007) (internal quotation and citation omitted). The errors alleged by Adkins do not rise to the extreme level necessary to violate due process. The testimony about Adkins being "drugged up" was a single, isolated comment, and trial counsel refused the court's offer to admonish the jury. The testimony that Adkins had threatened his wife "in front of many people" was extremely ambiguous and, as noted by the Kentucky Supreme Court, the jury likely interpreted this evidence as referring to the threat that Adkins had made to blow his wife's head off. [See R. 9 at A93]. The Kentucky Supreme Court's decision regarding the evidentiary errors did not result in a decision that was contrary to, nor an unreasonable application of, clearly established Federal law.

## VI. CONCLUSION

Having considered the matter fully, and for the reasons stated above, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus [R. 1] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004);

Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

    Signed November 1, 2010.

**Signed By:**
*Edward B. Atkins* *EBA*
**United States Magistrate Judge**